

U.S. Department of Justice

*United States Attorney*
*District of Connecticut*

---

*Connecticut Financial Center*

| | |
|---|---|
| *157 Church Street* | *(203) 821-3700* |
| *23rd Floor* | *Fac: (203) 821-5378* |
| *New Haven, Connecticut 06510* | *www.usdoj.gov/usao/ct* |

February 5, 2007

James T. Cowdery, Esq.
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103–2703

       Re:    **United States v. Hamilton Sundstrand Corporation**
               **Criminal No. 3:07 CR _____**

Dear Mr. Cowdery:

      This letter confirms the plea agreement entered into between your client, Hamilton Sundstrand Corporation (the "defendant" or "Hamilton"), and the United States Attorney's Office for the District of Connecticut (the "Government") concerning the referenced criminal matter.

## THE PLEA AND OFFENSE

      The defendant agrees to waive its right to be indicted and to plead guilty to a two-count information charging it with two counts of knowingly violating, or causing to be violated, conditions and limitations of a discharge permit issued by the State of Connecticut pursuant to Title 33, United States Code, Section 1342, in violation of 33 U.S.C. § 1319(c)(2)(A).

      The defendant understands that to be guilty of Count One, knowingly violating, or causing to be violated, conditions and limitations of a discharge permit issued by the State of Connecticut pursuant to Title 33, United States Code, Section 1342, in violation of 33 U.S.C. § 1319(c)(2)(A), the following essential elements of the offense must be satisfied:

      1.    The defendant violated or caused to be violated conditions and limitations of a discharge permit issued by the State of Connecticut pursuant to Title 33, United States Code, Section 1342, that is, a violation of Hamilton's discharge permit requirement that Hamilton conduct representative monitoring of its wastewater and report the results of that representative monitoring to the Connecticut Department of Environmental Protection in monthly Discharge Monitoring Reports; and

*James T. Cowdery, Esq.*
*February 5, 2007*
*Page-2*

    2.    The defendant acted knowingly.

The defendant understands that to be guilty of Count Two, knowingly violating, or causing to be violated, conditions and limitations of a discharge permit issued by the State of Connecticut pursuant to Title 33, United States Code, Section 1342, in violation of 33 U.S.C. § 1319(c)(2)(A), the following essential elements of the offense must be satisfied:

    1.    The defendant violated or caused to be violated conditions and limitations of a discharge permit issued by the State of Connecticut pursuant to Title 33, United States Code, Section 1342, that is, a violation of Hamilton's discharge permit by discharging wastewater containing high levels of copper into the Farmington River; and

    2.    The defendant acted knowingly.

## THE PENALTIES

Each offense carries a maximum penalty of five years' probation and a fine of $500,000. The defendant is also subject to the alternative fine provision of 18 U.S.C. § 3571. Under this section, the maximum fine that may be imposed on the defendant is the greatest of the following amounts: (1) twice the gross gain to the defendant resulting from the offense; (2) twice the gross loss resulting from the offense; or (3) $500,000.

In addition, the defendant is obligated by 18 U.S.C. § 3013 to pay a special assessment of $400 on each count of conviction. The defendant agrees to pay the special assessment to the Clerk of the Court on the day the guilty plea is accepted.

Finally, unless otherwise ordered, should the Court impose a fine of more than $2,500 as part of the sentence, interest will be charged on the unpaid balance of a fine amount not paid within 15 days after the judgment date. 18 U.S.C. § 3612(f). Other penalties and fines may be assessed on the unpaid balance of a fine pursuant to 18 U.S.C. §§ 3572 (h), (i) and 3612(g).

    <u>Restitution</u>

In addition to the other penalties provided by law, the Court may order the defendant to make restitution. The parties agree that no restitution is due in this case.

    <u>Sentencing Agreement</u>

The parties have agreed, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that the following sentence is an appropriate disposition of this case: (i) the defendant shall pay a criminal fine of $1 million, payable to the Clerk of the Court within 30 days of sentencing; and (ii) the defendant shall be placed on probation for a period of five years from the date of

*James T. Cowdery, Esq.*
*February 5, 2007*
*Page-3*

sentencing, during which time the defendant shall comply with the special conditions of probation set forth in Appendix A.

The defendant will not claim for income tax return purposes that the contributions made to the Connecticut Statewide SEP Account in satisfaction of any of the provisions of Appendix A are deductible expenses or otherwise offset its income tax liability. The parties agree that the Connecticut Department of Environmental Protection shall have exclusive control over the selection, design, and completion of any projects that may be funded in whole or in part by any contributions made in accordance with Appendix A. Neither Hamilton nor the government have any rights, interests or obligations concerning those projects, or any of the facilities, products and systems that may result from those funded projects.

### Cooperation

The defendant agrees to cooperate truthfully and completely with the Government in its investigation of possible violations of federal and state law and in any trial or other proceeding arising out of the investigation of the conduct set forth in the Stipulation of Offense Conduct. In particular, the defendant understands and agrees that its cooperation obligations will require it to (i) provide access to original documents and records, and (ii) request and act in good faith to require that, upon request and reasonable notice by the United States Attorney, defendant's directors, officers, and employees make themselves available for interviews by law enforcement agents and for attendance at legal and judicial proceedings, including grand jury sessions, trials, and other court hearings.

## **WAIVER OF RIGHTS**

### Waiver of Right to Indictment

The defendant understands that it has the right to have the facts of this case presented to a federal grand jury, consisting of between sixteen and twenty-three citizens, twelve of whom would have to find probable cause to believe that it committed the offense set forth in the information before an indictment could be returned. The defendant expressly acknowledges that it is knowingly and intelligently waiving its right to be indicted.

### Waiver of Trial Rights and Consequences of Plea

The defendant understands that it has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent it.

The defendant understands that it has the right to plead not guilty or to persist in that plea if it has already been made, the right to a public trial, the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against it, the right not to be compelled to incriminate itself, and the right to compulsory process for the attendance of witnesses to testify in its defense. The defendant understands that by pleading guilty it waives

*James T. Cowdery, Esq.*
*February 5, 2007*
*Page-4*

and gives up those rights and that, if the plea of guilty is accepted by the Court, there will not be a further trial of any kind.

The defendant understands that if it pleads guilty, the Court may ask it questions about each offense to which it pleads guilty, and if it answers those questions falsely under oath, on the record, and in the presence of counsel, its answers may later be used against it in a prosecution for perjury or making false statements.

### ACKNOWLEDGEMENT OF GUILT; VOLUNTARINESS OF PLEA

The defendant acknowledges that it is entering into this agreement and is pleading guilty freely and voluntarily because it is guilty.  The defendant further acknowledges that it is entering into this agreement without reliance upon any discussions between the Government and it (other than those described in the plea agreement letter), without promise of benefit of any kind (other than the concessions contained in the plea agreement letter), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges its understanding of the nature of the offense to which it is pleading guilty, including the penalties provided by law. The defendant also acknowledges its complete satisfaction with the representation and advice received from its undersigned attorney.  The defendant and its undersigned counsel are unaware of any conflict of interest concerning counsel's representation of the defendant in the case.

### SCOPE OF THE AGREEMENT

The defendant acknowledges and understands that this agreement is limited to the undersigned parties and cannot bind any other federal authority, or any state or local authority. The defendant acknowledges that no representations have been made to it with respect to any civil or administrative consequences that may result from this plea of guilty because such matters are solely within the province and discretion of the specific administrative or governmental entity involved.  Finally, the defendant understands and acknowledges that this agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving it.

### COLLATERAL CONSEQUENCES

The defendant further understands that it will be adjudicated guilty of each offense to which it has pleaded guilty and may be deprived of certain rights.  The defendant understands that the Government reserves the right to notify any state or federal agency by whom it is licensed, or with whom it does business, of the fact of its conviction.

### SATISFACTION OF FEDERAL CRIMINAL LIABILITY; BREACH

The defendant's guilty plea, if accepted by the Court, will satisfy the federal criminal liability of the defendant in the District of Connecticut as a result of all violations of Hamilton's National Pollutant Discharge Elimination System permit requirements known to the

*James T. Cowdery, Esq.*
*February 5, 2007*
*Page-5*

Government, including its participation in the conduct set forth in the Stipulation of Offense Conduct, which conduct forms the basis of the Information in this case.

The defendant understands that if it violates any term or condition of this agreement, engages in any criminal activity, or fails to appear for sentencing, the Government may void all or part of this agreement.  If the agreement is voided in whole or in part, defendant will not be permitted to withdraw its plea of guilty.

**NO OTHER PROMISES**

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered into unless set forth in writing, signed by all the parties.

This letter shall be presented to the Court, in open court, and filed in this case.

    Very truly yours,

    KEVIN J. O'CONNOR
    UNITED STATES ATTORNEY

     /s/
    ERIC J. GLOVER
    ASSISTANT UNITED STATES ATTORNEY

     /s/
    PETER KENYON
    SPECIAL ASSISTANT U.S. ATTORNEY

*James T. Cowdery, Esq.*
*February 5, 2007*
*Page-6*

    The defendant, Hamilton Sundstrand Corporation, certifies that it has read this plea agreement letter and its attachment(s) or has had it read or translated to it, that it has had ample time to discuss this agreement and its attachment(s) with counsel and that it fully understands and accepts its terms.


\_\_\_\_/s/_____        \_\_\_2/8/07_____
CLINTON L. GARDINER                Date
For the Defendant
Hamilton Sundstrand Corporation


    I have thoroughly read, reviewed and explained this plea agreement and its attachment(s) to my client, who advises me that it understands and accepts its terms.


\_\_\_\_/s/_____      \_\_2/8/07_____
JAMES T. COWDERY, ESQ.           Date
Attorney for the Defendant

<u>STIPULATION OF OFFENSE CONDUCT</u>

The defendant, HAMILTON SUNDSTRAND CORPORATION, and the Government stipulate and agree to the following offense conduct that gives rise to the defendant's agreement to plead guilty to the Information:

<u>Introduction</u>

1. The defendant, Hamilton Sundstrand Corporation, is a subsidiary of United Technologies Corporation. Headquartered in Windsor Locks, Connecticut, Hamilton designs and manufactures aerospace systems for commercial, regional, corporate and military aircraft, and is a major supplier for international space programs. With more than 16,000 employees and facilities throughout the world, Hamilton is among the largest global suppliers of technologically advanced aerospace and industrial products.

2. At all times material to the Information and Plea Agreement, Hamilton operated a facility at One Hamilton Road in Windsor Locks, Connecticut, where it manufactured air, spacecraft and marine control systems and components.

3. In the course of the manufacturing process, Hamilton generated various metal finishing and parts testing wastewaters that contained toxic pollutants, including chromium and copper. Some of those wastewaters were treated on-site in Hamilton's wastewater treatment system before being discharged to the Farmington River.

4. Under the Clean Water Act, Hamilton was prohibited from discharging pollutants to the Farmington River except in compliance with the conditions and limitations of a National Pollutant Discharge Elimination System (NPDES) permit issued by the Connecticut Department of Environmental Protection (CT DEP) under delegation from the Environmental Protection Agency ("EPA"). Hamilton's NPDES permit, number CT0000582, was reissued on October 31, 1996 and again on July 15, 2002.

5. Hamilton's NPDES permit established numerical limits at specified discharge locations for a list of pollutants, including hexavalent chromium and copper. To ensure compliance with those limits, the permit required that Hamilton conduct representative monitoring of its wastewater at those locations. The results of that monitoring were required to be submitted to the CT DEP in monthly Discharge Monitoring Reports (DMRs).

<u>Submission of false hexavalent chromium data</u>

6. Hamilton's wastewater treatment system included a hexavalent chromium reduction system, also referred to as the chrome reactor. The purpose of this system was to reduce hexavalent chromium to trivalent chromium, which can then be removed from the wastewater through chemical precipitation. The hexavalent chromium reduction was accomplished through the automatic addition of sulfuric acid and sodium bisulfite.

7. The sampling protocol for the chrome reactor called for the collection and analysis of six grab samples each operating day. The analytical data was compiled on Daily Records Sheets, which were used to prepare the monthly DMRs. The results of all monitoring of the chrome

reactor discharge were required to be included in the calculation and reporting of data in the monthly DMRs.

       8.  From 2001 through 2003, the chrome reactor did not meet hexavalent chromium permit limits on a consistent basis.  When grab samples revealed hexavalent chromium levels above permit limits, Hamilton sometimes omitted the data from Daily Records Sheets entirely.  Other times, the data was recorded on the Daily Records Sheets and then altered to conceal the permit violations.  In either case, the chrome violations were not reported to CT DEP on the monthly DMRs.  Instead, Hamilton knowingly submitted monthly DMRs that falsely presented altered and selected data as "representative" of the chrome reactor discharge, thereby concealing repeated violations of its NPDES permit.

Discharge of copper contaminated wastewater to the Farmington River

       9. On Friday, August 29, 2003, the beginning of Labor Day Weekend, Hamilton employees transferred the contents of a concentrated nickel strip tank containing chelated copper to a holding tank  in the wastewater treatment area.  Shortly thereafter, the contents of the tank were released into the wastewater treatment system.  Although the wastewater treatment system was not discharging at the time, the concentrated solution from the tank contaminated more than one hundred thousand of gallons of wastewater, and turned the contents of the entire system blue.

       10.  Some facility systems continued to operate throughout the holiday weekend and wastewater continued to enter the treatment system.  By Monday September 1, 2003, the primary holding tank (referred to as the equalization tank ) was nearing capacity.

       11.  Rather than stopping or rerouting wastewater flows or risk overflowing the equalization tank, Hamilton knowingly discharged tens of thousands of gallons of contaminated wastewater to the Farmington River between the morning of September 1, 2003 and the morning of September 2, 2003.  The wastewater was not analyzed prior to the discharge and CT DEP was not notified.

       12.  Subsequent analysis of a sample of the contaminated wastewater gathered on September 2, 2003 revealed very high concentrations of copper (23.74 mg/l) – well in excess of the instantaneous maximum levels allowed by the NPDES permit (3.0 mg/l).  Samples gathered on September 3, 2003 violated both daily maximum and monthly average limits for copper.  Samples collected on September 3, 2003 and September 9, 2003 also violated the permit's aquatic toxicity limits.

The written stipulation above is incorporated into the preceding plea agreement. It is understood, however, that the defendant and the Government reserve their rights to present additional relevant offense conduct to the attention of the Court in connection with sentencing in accordance with the parties' plea agreement.

_____/s/_____  \_\_\_\_\_/s/_____
CLINTON L. GARDINER    ERIC J. GLOVER
For the Defendant    ASSISTANT UNITED STATES ATTORNEY
Hamilton Sundstrand Corporation


_____/s/_____  \_/s/_____
JAMES T. COWDERY, ESQ.    PETER KENYON
Attorney for the Defendant    SPECIAL ASSISTANT U.S. ATTORNEY